UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
SHERRY HINES,

               Plaintiff,

-against-

VILLAGE OF HEMPSTEAD POLICE
DEPARTMENT,

               Defendant.
---------------------------------------------------------------X

CV 08 5236

COMPLAINT

Jury Trial Demanded

WEXLER, J.
TOMLINSON, M

Plaintiff SHERRY HINES, by her attorneys, Leeds Morelli & Brown, P.C., as and for her complaint against the Defendants herein, allege, upon personal knowledge and upon information and belief as to all other matters:

## JURISDICTION AND VENUE

1. This is a civil action based upon Defendants' violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, et seq.; New York State Executive Law, Human Rights Law, § 296(6); the Fourteenth Amendment of the United States Constitution, as enforced through 42 U.S.C. § 1983, et seq.; and any other cause of action that can be inferred from the facts set forth herein.

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331.

3. Venue is proper pursuant to 28 U.S.C. §1391.

1

4. All prerequisites to the institution of this action have been met. A charge of discrimination was duly filed with the EEOC and a Right to Sue letter was issued on September 29, 2008.

## PARTIES

5. Plaintiff Sherry Hines was and still is a resident of 49 Oakley Avenue, Massapequa, New York 11758.

6. Defendant, Nassau County Police Department ("Department") is a public employer with a principal place of business at 99 Nichols Court, Hempstead, New York 11550.

## BACKGROUND FACTS

7. Plaintiff is a 51 year African American woman.

8. In or around April 1986, Plaintiff began working as police officer for the Nassau Village of Hempstead Police Department. Plaintiff made approximately $30,000/year.

9. In 1987, Plaintiff was assigned to the Juvenile Aid Unit ("JAB").

10. Throughout her tenure, Plaintiff was continually promoted within the Department. In 1989 she was promoted to Detective and in 1993 she was promoted to Sergeant.

11. At the same time Plaintiff was promoted to Sergeant, Richard Wells ("Wells"), a white male, was promoted to Lieutenant. Because Wells' duties as President of the

Police Benevolent Association often required him to be out of the office, Plaintiff frequently performed the duties associated with his position as Lieutenant.

12. Plaintiff continued to be compensated as a Sergeant at approximately $62,000/year even though she was performing the functions of a Lieutenant.

13. Plaintiff continued to receive raises as a Sergeant. In or around 1998, Plaintiff was making approximately $94,000/year.

14. In or around May 1999, Plaintiff and Joseph Wing ("Wing"), a white Asian American male, were promoted to the positions of Detective Sergeants. Wing was promoted at the same time as Plaintiff despite having less seniority in his rank as Sergeant and less time served in an Investigations unit. At that time, Plaintiff made approximately $95,000-$101,000/year.

15. On or about July 9, 2001, Plaintiff was promoted to the position of Lieutenant. Upon information and belief, Wing was also promoted to the position of Lieutenant at that time.

16. Upon her promotion to Lieutenant, Russo requested that Plaintiff remain in JAB to use her extensive expertise to assist Wells with the Unit. This was unusual because, by keeping Plaintiff in JAB, there were two supervisors with the same rank in the Unit, both her and Wells.

17. In or around February 2003, Plaintiff and Wing were both being considered for the position of Detective Lieutenant.

18. Upon information and belief, on March 4, 2003 Village board meeting, Russo submitted only Wing's name for consideration to the Detective Lieutenant position.

3

That same day, Wing was designated as the new Detective Lieutenant, despite possessing less supervisory experience running a detective unit than Plaintiff.

19. On or about March 4, 2003, Plaintiff complained to Wells that she was denied consideration for the promotion because of her race and gender. Wells told Plaintiff that she did not have a legitimate grievance.

20. Between the years 2003 - 2006, Plaintiff made approximately $123,000-150,000. During the same time period, Wing, as a Detective Lieutenant made approximately $165,000-200,000.

21. From August 2003 – October 2003, Defendant promoted Brian Schirmacher, a white male, John Simonitsch, a white male, Willie Dixon, a black male, Vincent Montera, a white male and Scott Donohue, a white male, to the positions of Lieutenants.

22. In December 2005, Russo promoted two other white male officers, Michael Kearny and Christopher Ahearn, to the positions of Lieutenants. New openings were created to accommodate these promotions.

23. In December 2008, Wing stated in a deposition that the excessive number of lieutenants was one reason why Plaintiff was demoted from her position as Commanding Officer of the Domestic Violence Unit. However, despite the fact that Plaintiff was senior in both rank and supervisory experience to all seven of the newly made Lieutenants, new spots were created to the males and not to her.

24. In or around January 2004, Defendant posted an announcement for promotional exams for the positions of Chief of Police for Hempstead Village and Chief of Police of Sands Points.

4

25. On January 16, 2004, Plaintiff learned that the announcement required that the candidates have at least four years experience as a Lieutenant in order to take the exam. This requirement effectively precluded Plaintiff, the only female applicant, from qualifying to take the exam.

26. On or about February 4, 2004, Plaintiff expressed to Karl Kampe, the Civil Service Commission Executive and Lieutenant Wells, the President of PBA, her objection to the requirement that a candidate have at least four years experience as a Lieutenant in order to take the Chief of Police Exam. Wells told Plaintiff that the requirement was based upon statute.

27. Upon information and belief, there exists no statute that requires a candidate to have at least four years experience as a Lieutenant in order to qualify to take the Chief of Police Exam.

28. Rule XVIII of the Nassau County Civil Service Rules addresses promotion and states that a person eligible for permanent promotion must serve a minimum of six months in the lower position. Specifically, to qualify for the Chief of Police position, a candidate must have seven years as a police officer and one year in a supervisor position.

29. At the time of the exam, Plaintiff had seventeen years experience as a police officer and fourteen years experience in her supervisory position within the Juvenile Aid Bureau.

30. Defendant did not provide Plaintiff with a valid non-discriminatory reason for initially excluding Plaintiff from taking the Chief of Police exam.

5

31. After complaining to Russo and Kampe, Defendant amended the posting for the Chief of Police exam to reduce the requirements from four years in rank as lieutenant to two years in rank in order to qualify for taking the exam. However, the requirement remained that a candidate must have four years experience in rank as lieutenant in order to be appointed to the position of Chief of Police. This also effectively prevented Plaintiff from equally competing for the position because, although it allowed her to take the exam, it disqualified her from even being appointed to the position when it became vacant.

32. In or around July 2004, Defendant restricted the hours of her two part-time employees. Additionally, Defendant refused to honor an agreement to make the remaining employee a permanent employee. As a result, Plaintiff is forced to take on the additional workload.

33. On or about March 9, 2004, Plaintiff filed a formal complaint of discrimination based on race and gender with the New York State Division of Human Rights.

34. On or about January 31, 2005, Plaintiff's complaint was dismissed by the New York State Division of Human Rights.

35. On April 7, 2007, Wing was appointed to the position of Chief of Police, resulting in two open administrative positions, Assistant Chief and Deputy Chief. Both these positions required approval by the Mayor and Board of Trustees of the Village.

36. In or around April 2007, Deputy Mayor Lenora Long ("Long") advised Plaintiff that her name had been submitted for approval for the position of Assistant Chief.

37. On May 1, 2007, the Village Board met to vote on the Chief positions. That same day, Officer Steve Wilson ("Wilson") informed Plaintiff that a Village Trustee, Perry

6

Pettus ("Pettus") was angry that Plaintiff had been submitted for the Assistant Chief position.

38. Upon information and belief, Pettus had expressed that he wanted Plaintiff to voluntarily relinquish the Assistant Chief position to his candidate, Bill Dixon, a black male. Pettus had told Wilson that, should Plaintiff fail to do this, he would "box [her] out" to ensure she was never promoted.

39. Wilson further informed Plaintiff that Pettus had stated that Wing did not like her because she "sued the Village" and threatened to permanently demote her to a desk position.

40. On May 22, 2007, Wing eliminated Plaintiff's command as the Domestic Violence Coordinator/Commanding Officer of the Domestic Violence Unit and demoted her to a desk position.

41. On or about October 1, 2007, Plaintiff filed a formal charge of discrimination based on gender discrimination and retaliation with the Equal Employment Opportunity Commission.

42. On or about September 29, 2008, Plaintiff's charge was dismissed without prejudice from the EEOC and she was issued a Right to Sue letter.

43. On May 23, 2007, Vincent Neefus, a white male, was promoted to the Assistant Chief.

44. In December 2007, Wing stated in a deposition that he demoted Plaintiff from her position with the Domestic Violence Unit because she did not supervise any sworn personnel. At the same time at Plaintiff demotion, Wing had simultaneously

7

promoter Mark Matthews ("Matthews"), a black male Lieutenant, to the position as head of Civil Personnel. Matthews also did not supervise any sworn personnel.

45. Throughout Plaintiff's fourteen year tenure in JAB, she supervised eight detectives. The current Detective Lieutenant, Shirmacher, supervises only five detectives.

## CAUSES OF ACTION

46. As described above, the Defendant has taken adverse employment actions against Plaintiff, subjected her to a hostile work environment and/or maintained an atmosphere of adverse actions, due to her gender, race and/or her opposition to discriminatory practices, in violation of Title VII of the Civil Rights Act of 1964.

47. Based on the foregoing, Plaintiff has been subjected to unlawful discrimination by the Defendant on the basis of her gender and race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e) *et seq.* and the New York State Executive Law, Human Rights Law §290 *et seq.*, as well as all other applicable state and local laws.

48. The Defendant deprived Plaintiff of her constitutional rights, as secured by the Fourteenth Amendment to the United States Constitution, in violation of 42 U.S.C.§ 1983. The Defendant has intentionally committed, condoned, or was deliberately indifferent to the aforementioned violations of Plaintiff's constitutional rights in that their custom or practice of discriminating and/or retaliating against Plaintiff was based on her opposition to discriminatory practices.

49. By reason of Defendant's discriminatory actions against Plaintiff, Plaintiff has suffered a loss of earnings and benefits, future earnings and benefits and great pain. Plaintiff is thus entitled to all forms of applicable compensatory damages, equitable relief, and any other damages and/or remedies permissible under law.

WHEREFORE, Plaintiff demands judgment against defendants for all compensatory, emotional, physical, and punitive damages, lost pay, front pay, injunctive relief, reinstatement and any other damages permitted by law. It is further requested that this Court grant reasonable attorneys' fees and the costs and disbursements of this action and any other relief to which plaintiff is entitled. Plaintiff demands a trial by jury.

Dated: Carle Place, New York
December 22, 2008

Respectfully submitted,

LEEDS MORELLI & BROWN, P.C.
*Attorneys for Plaintiff*
One Old Country Road, Suite 347
Carle Place, New York, 11514
(516) 873-9550

By: ______________________
Lenard Leeds

## VERIFICATION

STATE OF NEW YORK )
                              ) ss.:
COUNTY OF NASSAU )

SHERRY HINES, being duly sworn, states that she has reviewed the foregoing Complaint and that the contents of said Complaint are true to her own knowledge, except as to matters therein stated to be alleged upon information and belief and, as to those matters, she believes them to be true.

*SHERRY HINES*

Duly sworn to before me
this 23rd day of December 2008

_____
NOTARY PUBLIC

MATTHEW I. MARKS
NOTARY PUBLIC, STATE OF NEW YORK
NO. 02MA6056865
QUALIFIED IN SUFFOLK COUNTY
COMMISSION EXPIRES APRIL 9, 20__